Case number 11-047, Jane C. Olle v. C House Corporation. Okay, would the lawyers please approach and introduce yourself to the court, and then we will proceed. Good morning. I'm Emily Jansen, here on behalf of Mr. Olle. Okay, and appellant, you know you have to reserve some time for your rebuttal. I would like to do so. Okay, let's proceed. Your Honors, we are here today simply because of the occupation that our client has chosen. My client was a plumber. If he was a 6'8 defensive lineman, if he was a teacher, we would not be here today. What we're dealing with is a strict liability statute, the Dram Shop Act. An act that the legislature has chosen to put the burden on the sale of a dangerous product on those that benefit from the sale of that product. In these circumstances, our client was acting as a patron at a Dram Shop, at a facility that sells alcohol. They were known to have not a lot of security. You understand that we have read the facts of the case, we've read the briefs, okay? So we want you to comment and tell us where this trial judge went wrong. Yeah, does it matter? I mean, you're just saying if he was this, he was that. Does it matter if he's a policeman or not? Does the Dram Shop give him the right to sue whether he's a policeman or not? Yes, it does. It's a strict liability statute with very little exceptions to that statute. And it's only that, like I said, the reason why we're here today is simply because he was a Cook County Sheriff. If he was not, there would be absolutely no way that this would have been disposed of. There's nothing in the statute that excludes police officers or county sheriffs, is there? No, there's not at all. Okay. Not at all. Not one thing, and that's why. And if the legislature intended that to happen, normally they put it in the statute. Exactly. And here, the minor exceptions that may or may not exist to the statute have absolutely nothing to do with the occupation of the person that is filing suit under the act. It's a strict liability statute. It does not look to negligence. It does not look to anything else. There is strict liability, and because of that, it's also insurable. So do we want to shift the burden onto individuals or to the facilities that sell this dangerous product? And that's why the legislature and the intent behind the statute was enacted. I don't think any of the cases are analogous because of that point, because it is a strict liability statute. Well, do you have any cases that show that a police officer could sue under the Dram Champagne? No, there isn't. This is a case of first impression as far as both parties know. There's absolutely none. Have you looked in New York and Michigan? They have similar Dram Champagne. Yes, I have looked several times. I mean, the closest thing I could possibly find was actually a case down in Illinois where a St. Louis police officer was in a Dram Champagne case but tried to bring in some similar issues. But there is very, very little that I could find, even anything under any other federal statute or, excuse me, any other state statute throughout the country. We've looked. And I believe this is a case of first impression here. I mean, I know in response to the trial court's ruling, you know, they based it on the inherent risk rule. The inherent risk rule precluded our action. So we do have an alternate argument that if that's the case, that was improper under summary judgment. There were questions of that that existed about the reasonable or the risk that incurred. So you're not saying that it couldn't possibly be an affirmative defense. You're just saying it doesn't trump the Dram Champ Act. It does not prohibit, the inherent risk doctrine doesn't prohibit a policeman or an officer from bringing a Dram Champ Act. He may have some defense like, what is it, provocation or my mind is losing my way. Or complicity. And I believe that those have been severely limited. But I do believe that the strict liability statute does trump the inherent risk rule. Simply for the fact that the legislator chose to put the burden on the facility serving alcohol. They didn't choose to put it on an individual. It's not that bar owners can come in and hope that they befriend police officers so they don't have to insure against the fact that there may be fights. And so I do believe that it trumps that. Now we did place our alternative argument because that's what the court ruling was based on. The court ruling was the trial court rule that the inherent risk rule precluded our action. That's why we made the alternative argument that, look, this was a summary judgment proceeding and there are questions of fact that exist as to the reasonableness of the risk. And those are based on the facts, which I'm sure that you have read. He was sitting there, he was invited there, and he was drinking. Again, I do believe that strict liability prevailed. There was an intent behind it and the exceptions to it, the complicity and the provocation, are very limited. And I believe for the most part, provocation has been overruled. Complicity has been narrowed to the fact that you have to, I mean, almost, you know, pour the alcohol down the person. Right. And here, I mean, that's not the case. The case law behind the Dram Shop Act shows particularly that they chose to put the burden on these people that, again, economically can insure against it. And there is no exceptions with the minor point, alcohol down somebody's throat. Now I would be more than happy to also make our alternative argument because of the trial court's decision that there were questions of theft that existed and that the deposition was attached and it was not hidden. And it does seem like a reasonable inference to make that any individual that is sitting at a bar for three or four hours, you know, it is not necessarily going to be in the best physical, have the best physical ability to go ahead and defend any action. But again, it doesn't matter that if he was a sumo wrestler, some other sort of person that's used to, you know, go up seed fighter. The same thing here. He's being precluded because they're trying to bring in this inherent risk. Let me ask you this. Was there a question of fact as to when he acted under color of law? When he started, he wasn't necessarily a police officer. Maybe somewhere during the course of that, he became known that he was an officer of the law. Well, I know one of the arguments that the respondent's been trying to make is that, look, when he decided to act as a police officer, all of a sudden he stopped on duty. And I believe even one of the cases, the Knight case that they cited, kind of goes against that. The Knight case was where there was this officer that responded to a call of a semi-truck, happened to have, you know, a commercial license. Yeah, but my question is, isn't that a question of fact? Oh, sure, definitely. And the trial court ruled in the summary judgment. And that's why that was an alternative argument. There are several question of facts. And there's a question of fact under both inherent risk rule theory and, you know, under what we have and with the DRAM shutbacks at the ability. Okay. I guess that was my time. Okay. Thank you. Yes. Tell me, what's your best case, or do you have a case, that tells us that a police officer cannot bring a claim under the Illinois DRAM shutback? Or any DRAM shutback? My best case is the – or there's two. There's the Schmidt and the Phanson case. But to answer your question, it is a case of first impressions. I couldn't find a case either where a police officer has brought a claim under the DRAM shutback. Schmidt and Phanson, you know, are facts. They're where, you know, the police officer and Schmidt. Schmidt, you know, they're both on point. Is Schmidt a DRAM shutback case? No, neither of them are DRAM shutback cases. Okay, so my question to you is, is there a case anywhere in the United States of America that says that a police officer cannot bring a claim under a DRAM shutback? Not to my knowledge, no. And I don't believe counsel has said the same thing. But in my arguments, and their arguments are, you know, because of that, because there isn't a case that this is an intent of the statute argument. And my argument to that effect is, you look at the DRAM Shutback, you look at the history of the DRAM Shutback, there's no – there's nothing in there that says you can't, you know, that courts can't create another defense. There are no statutory defenses to the DRAM Shutback. Complicity and provocation are court-created. And that's the extension that I'm asking to be made here for the inherent risk rule. It's not a crazy, absurd extension to make. The inherent risk rule is a, say, you know, a rule that's been around for quite a while. So you're asking us to extend that inherent risk rule to a DRAM Shutback case? Correct, correct. And I think counsel is asking you not to extend it. We should make some new law here. That's what I'm asking for because there is no law. So any law that is going to be made is going to be new law. But you look at – Unless we don't publish it. Right. Addressing some of counsel's arguments, we're not asking that, you know, Sheriff Ali's case be dismissed because he's a police officer. That's not the inherent risk rule. The inherent risk rule requires a few things. The officer needs to be performing an act, a police act or a firefighting act. He needs to be on the defendant's property. And he needs to be injured by a risk that's inherent in his job. Sheriff Ali, while he started off as a patron, once he identifies himself, and there's no question he does, he does identify himself as a sheriff to quell this disturbance, he is now acting in the color of law. Let me just stop you there because I think that was what Justice Gordon was bringing up with the first speaker, that there is a question of fact because even though he says he's a policeman, two other people say he says he's a sheriff at the end of the fray and not at the beginning. So isn't that a question of fact? No, I don't think so because the plaintiff himself says, I ID'd myself as a sheriff when the incident started. The other two guys that you're referring to are our employees at the bar. And I don't think they were there at that point when it first started. They came out after Sheriff Ali was out of the office. So a question of fact would exist if the individuals who assaulted the sheriff said, oh, I didn't hear him say that, but they were never deposed in this case. That would raise a question of fact. The only fact whether he identified himself as a sheriff before he was injured is from Mr. Ali himself where he unequivocally says, yes, I ID'd myself as a sheriff. And I cited two cases in here, Packard and Banks, the second district and the first district, that says it doesn't matter if you're on duty, off duty, in uniform, out of uniform. If you're performing an act as an officer, making an arrest, asking somebody to leave a premises, you're acting in the scope of your duties regardless of whether you've got the shield on or not. In terms of the strict liability argument that's been made, there are clear defenses to strict liability cases. Most commonly it's products liability cases, assumption of risk, misuse of the product, are defenses to strict liability products cases. And I think that's where the trial court, part of its reasoning in its ruling in our case was, well, assumption of risk applies to strict liability, so why can't the inherent risk rule apply to the Dram Shop Act? And I'm kind of picking up on that. That's a logical extension to make to the Dram Shop Act as well. You know, prohibiting or allowing the plaintiff's case to go forward would be creating an exception to the inherent risk rule. The inherent risk rule is designed to protect landowners in situations such as in Schmidt. Isn't that a common law rule? I'm sorry? Is that a common law rule? The inherent risk rule? Yes. Well, that's the question I would – I'm sorry. Presiding Justice, go ahead. Go ahead. I was going to ask you a question along those lines since it's a common law rule. Isn't the inherent risk rule basically a duty-based rule? It revolves around what duty is owed. And the inherent risk rule basically provides that the landowner doesn't have a duty to protect the police officer against risks that are inherent in their line of work. But since the Dram Shop Act is a statutory creation, doesn't the statute impose the very duty that the inherent risk rule by common law takes away? I see what you're pointing at. And I would argue, no, it doesn't. The inherent risk rule is a duty-based, but the facts – or to put it in a better way, doesn't it do away with the necessity of imposing a duty just by imposing strict liability? Well, then I would go back to what I was just bringing up a few minutes ago. There are defenses to strict liability. It's not absolute liability. Products cases, the misuse, the assumption of risk, those are defenses that apply to those cases. So similarly, just because the inherent risk rule applies a duty-based argument, there's no reason it can't apply to the Dram Shop Act. And getting back to what I was saying, if the Dram Shop Act, Mr. Ali's case, is allowed to proceed, it would create this exception to the inherent risk rule and open up liability for athletic stadiums, bars, hotels, restaurants, anywhere that serves alcohol. A sheriff comes in, he's injured, arresting somebody, but the same sheriff goes and arrests somebody in somebody's house who had been drinking, and that case could proceed because there's no Dram Shop Act for the providing alcohol in a private house. That's an exception that I think is unfair to the landowners who would be burdened with that. The Dram Shop Act, as I know it, is not a duty statute. It's an absolute liability statute. It's a statute that is carved out for a specific purpose. And you want to apply a common law duty rule to a statutory strict liability statute. Yes, I do. Do you know anywhere in the law where a strict liability statute existed where a common law defense was utilized? Yeah, I mean, the Dram Shop Act. You've got provocation and complicity. Those are two really good examples of common law defenses to a strict liability statute. And that's why I'm not arguing that this is a sort of extension debate. I'm saying create a third defense, the inherent risk rule, in addition to complicity and provocation. Provocation, whether the plaintiff provoked the argument that started the fight, you're looking at the plaintiff's conduct. The inherent risk rule, you're looking at the plaintiff's conduct. What was the risk that he faced when he went into the situation? And just because it's a statutory creation, it doesn't mean you can't have common law defenses. And the Dram Shop Act itself is a great example of that. Thank you very much. Any rebuttal? I think one thing we can all agree on is that the Dram Shop Act is unique, not just in its strict liability, but it does differ from product liability. We're not talking about building a toaster or even something that could be considered more dangerous, like a vehicle. We're talking about a specific kind of product and the dangers that it causes and people profiting off of it in a much different way than we would be with a products liability case. Packard and Banks, the two cases that he referenced, Packard was actually an immunity case, a governmental immunity case, and Banks more had to do with indemnifying a certain police officer that was involved in an altercation, in a shooting. And again, this is different. When we're talking about how it would create this big hole, all of a sudden police officers, I don't necessarily think that's true. But even if it was, that's why, again, the Dram Shop Act was enacted for the unique dangers that are associated with alcohol, which is different from products liability. And regardless, I do think that there's a question of facts that exist about the plaintiff's conduct and the risks that he faced in that situation, if it's even applicable. It seems to me that if this was such a dangerous precedent to set that we would have seen this before. I agree. Thank you. Well, thank you. You gave us a very interesting case, okay? And we've had a lot of fun with it, and we'll take it under advisement, and we'll give you our decision.